IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TRENTON SCOTT UNRUH,

    **Plaintiff,**

    v.                                            CASE NO. 24-3118-JWL

CITY OF GARDEN CITY, KANSAS, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff Trenton Scott Unruh, a state prisoner appearing pro se and in forma pauperis, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. His claims arose during his confinement at the Finney County Jail (FCJ) in Garden City, Kansas.

On August 6, 2024, the Court issued a memorandum and order (M&O) finding that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate officials of the FCJ. (Doc. 9 (citing *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), and *Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991)). The Court ordered FCJ officials to prepare and file a *Martinez* Report, stating that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." *Id.* at 2. The *Martinez* Report (Doc. 14), hereinafter referred to as "the Report," has now been filed, and Plaintiff's amended complaint is before the Court for screening in light of the Report. The Court's screening standards are set forth in the M&O filed July 25, 2024. (Doc. 7.)

1

I.  **Nature of the Matter before the Court**

In the amended complaint, Plaintiff names as Defendants Corporal E. Molinar and Sergeant Marino[1], both of whom work at the FCJ. Plaintiff alleges that on February 25, 2024, Defendant Molinar used his body camera to record a strip search of Plaintiff. Plaintiff spoke to the Finney County Sheriff, hereinafter referred to as the Sheriff, and CO Figeroa, then wrote a grievance about the event. Defendant Molinar retaliated against Plaintiff for writing the grievance by locking Plaintiff down. Defendant Marino then denied Plaintiff's appeal before receiving or considering it and without holding a hearing. (Doc. 8, p. 2-3.) Plaintiff's claims are discussed in more detail below. He seeks monetary damages. *Id.* at 5.

II.  **The *Martinez* Report**

The Report acknowledges that the strip search, the grievance, and a subsequent disciplinary action occurred. (Doc. 14, p. 2-3.) Affidavits attached to the Report are referenced in the following discussion.

III. **Discussion**

Plaintiff brings two counts in the amended complaint. Each count asserts the violation of Plaintiff's rights under multiple amendments to the United States Constitution. The Court concludes that each of Plaintiff's claims is subject to dismissal for the reasons explained below.

   A.  **Count I: The Strip Search**

As Count I, Plaintiff alleges a violation of his rights under the Fourth Amendment because he was subjected to an unreasonable search that was not based on any suspicion that he had contraband and his rights under the Eighth Amendment because the filming of the search

---

[1] In his amended complaint, Plaintiff refers to this individual as "Sgt. Moreno," so that is how she was entered as a party in this action. The *Martinez* Report now before this Court, however, reflects that the individual is named "Yuridia Marino." (*See* Doc. 14-2 and Doc. 14-3.) The Court will therefore direct the clerk to alter the case caption to reflect the correct spelling of Defendant Marino's name and will use the correct spelling throughout this order.

constituted cruel and unusual punishment. (Doc. 8, p. 3.) Specifically, Plaintiff claims that on February 25, 2024, Defendant Molinar strip searched Plaintiff with his body camera on and recording. *Id.* at 6. Plaintiff also points out that the FCJ officer who conducted the strip search upon his January 2024 arrival at the FCJ was not wearing a body camera. *Id.*

With respect to this claim, the Report largely focuses on whether the February 2024 search was in fact recorded by Defendant Molinar's body camera. It concludes that Plaintiff "was not recorded by Cpl. Molinar during a strip search." (Doc. 14, p. 2.) An affidavit from the Sheriff is attached to the Report and states that when the Sheriff inquired, FCJ staff explained that "the green light on the Body Cam means the power is on but it is not recording" and that "a red light shows that the Body Cam is recording." (Doc. 14-1, p. 2.) The Sheriff further states that this was demonstrated to him and he "could see that there was a green light on the face of the Body Cam. When Sgt. Dickson started to record, a red light appeared next to the green light on the Body Cam." *Id.* A deputy sheriff responsible for training FCJ supervisors on using the body cameras also confirmed to the Sheriff "that the green light means the Body Cam is active but not recording and the red light indicates the Body Cam is recording." *Id.* at 2-3.

The Tenth Circuit has long held that district courts "cannot resolve material disputed factual issues by accepting the report's factual findings when they are in conflict with pleadings or affidavits." *See Hall*, 935 F.2d at 1109 (citations omitted). Further, "[a] bona fide factual dispute exists even when the plaintiff's factual allegations that are in conflict with the *Martinez* report are less specific or well-documented than those contained in the report." *Id.* "Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.* at 1110.

In this matter, Plaintiff's claim that the recording of his strip search violated his constitutional rights rests on the factual allegation that the strip search was recorded. Although Plaintiff alleges in his amended complaint that the green light on the body camera meant that it was recording, he provides no factual support for that allegation. This is the sort of conclusory allegation that is insufficient to state a plausible claim on which relief could be granted. Plaintiff will be given time, however, to show cause, in writing, why his Eighth Amendment claim in Count I should not be dismissed for failure to state a claim on which relief can be granted.

Turning to Count I's Fourth Amendment claim—that the strip search was unreasonable—Plaintiff asserts that the February 2024 search was not prompted by a suspicion that he possessed contraband and he states that FCJ staff have never found any contraband in his possession. (Doc. 8, p. 6.) Specifically, Plaintiff alleges that no contraband was found on him during the February search, nor has Plaintiff ever been "under any suspicion of having any contraband" while in FCJ custody. *Id.* The Report states that on the day in question, Defendant Marino ordered a shakedown of A pod and "[s]ix random [A-pod] inmates were selected to be strip searched," including Plaintiff. (Doc. 14, p. 2.) Defendant Molinar's affidavit, attached to the Report, asserts that such strip searches conducted "as part of shakedowns" are "designed to prevent contraband and weapons such as shanks." (Doc. 14-3, p. 2.)

The Court offers no opinion regarding the potential success of Plaintiff's Fourth Amendment claim on its merits. It does note, however, that Plaintiff seeks only general money damages as redress for the alleged Fourth Amendment violation. (*See* Doc. 8, p. 5.) In addition, Plaintiff does not allege in the amended complaint that the search physically injured him or involved the commission of a sexual act.

The Prison Litigation Reform Act (PLRA) provides in part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). As used in the PLRA, "prisoner" includes "any person incarcerated or detained in any facility who is accused of . . . violations of criminal law." 42 U.S.C. § 1997e(h). This provision of the PLRA "limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). This statute applies regardless of the nature of the underlying substantive violation asserted. *Id.*

Simply put, without "a prior showing of physical injury or the commission of a sexual act," a prisoner plaintiff may not obtain compensatory damages. *Id.* at 878. Nominal and punitive damages, however, are not barred. *Id.* at 879. "'Nominal damages are damages in name only, trivial sums such as six cents or $1" that do not purport to compensate for past wrongs" and "are symbolic only." *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1264 (10th Cir. 2004) (citation omitted). In the amended complaint, Plaintiff seeks $250,000.00 for the alleged violation of his Fourth Amendment rights. Although Plaintiff does not identify the type of damages he seeks, $250,000.00 is too large an amount to be categorized as nominal damages.

Punitive damages "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Even liberally construing the amended complaint and taking all alleged facts therein as true, there is no indication that the search being challenged was motivated by evil motive or intent, nor is there any indication that it involved reckless or callous indifference

5

to Plaintiff's federally protected rights. Thus, the Court notes that even if Plaintiff's Fourth Amendment claim contains a plausible claim for relief, Plaintiff appears to seek only compensatory damages, which—under the facts alleged in the amended complaint—is barred by § 1997e(e). Thus, this claim is subject to dismissal as well.

### B. Count II: The Disciplinary Action

As Count II, Plaintiff alleges the violation of his rights under the Eighth and Fourteenth Amendments because the lockdown was imposed in retaliation for his filing a grievance and the Sixth Amendment because his appeal from the grievance result was denied before it was considered. (Doc. 8, p. 3.) Plaintiff asserts that two days after the search, he spoke with the Sheriff, who was at the FCJ, and told him that Defendant Molinar had recorded a strip search of Plaintiff. *Id.* at 7. Plaintiff then spoke about the search with the deputy on duty in his pod, CO Figeroa, who suggested that Plaintiff write a grievance to Lieutenant Heckle.

Plaintiff did so, but Defendant Molinar responded to the grievance, stating that he had not said the green light on the body camera indicated it was recording and that Plaintiff should file his grievance correctly. *Id.* Plaintiff asserts that Defendant Molinar "obviously was mad about [Plaintiff] telling the Sheriff of his misconduct." *Id.* Defendant Molinar then imposed a 48-hour lockdown on Plaintiff. *Id.* Plaintiff further asserts that Defendant Molinar then "denie[d his] appeal before [Plaintiff] even wrote one and [Defendant Marino] signed off denying [Plaintiff's] appeal," without having heard or read it. *Id.*

Plaintiff frames his retaliation claim in Count II as alleging a violation of either the Eighth or Fourteenth Amendments. (Doc. 8, p. 4.) Generally speaking, however, retaliation for filing a grievance or otherwise reporting misconduct by a jail official is considered a claim under the First Amendment, as made applicable to the States by the Fourteenth Amendment. *See Williams v.*

*Meese*, 926 F.2d 994, 998 (10th Cir. 1991); *Carter v. Wyo. Dept. of Corr.*, 2024 WL 732157, *2 (10th Cir. Feb. 22, 2024) (unpublished) (citing *Williams* and stating: "Adverse actions taken in retaliation for a prisoner's filing of grievances may violate the First Amendment"). In any event, to state a plausible claim for unconstitutional retaliation, Plaintiff must allege sufficient facts to support a plausible claim that "'"but for" the retaliatory motive, the incident to which he refers, including the disciplinary action, would not have taken place.'" *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citation omitted).

Defendant Molinar's affidavit, attached to the Report, states that he wrote Plaintiff up after learning of the grievance Plaintiff filed against him because Plaintiff had "violat[ed] Grievance Rules #1, #2, [and] #4 in the Finney County Sheriffs Inmate Handbook." (Doc. 14-3, p. 3.) Those rules, a copy of which is attached to the Report, state:

1. An inmate may in order to address or seek a solution to a problem, other than a disciplinary action, file a grievance.

2. Inmates must attempt to resolve their problem/situation through the Jail Deputy and then the Jail Supervisor before filing a grievance.

. . .

4. Inmates will not be subject to any adverse action as a result of filing a grievance. Unless the inmate fails to follow the process (see 1 and 2 under inmate communication form) or the inmate is abusive, threatening or misusing the system of grievances.

(Doc. 14-1, p. 8.)

Defendant Molinar's affidavit further states that Plaintiff did not seek a resolution of his issues with Defendant Molinar before filing a grievance, thereby violating the rules. (Doc. 14-3, p. 3.) The information in the Report leads the Court to conclude that Plaintiff cannot show that the 48-hour lockdown imposed upon him would not have occurred if he had not spoken to the Sheriff about or otherwise reported that Defendant Molinar had recorded his strip search. Thus, it appears

7

that Plaintiff's retaliation claim in Count II is subject to dismissal for failure to state a claim on which relief can be granted. As with his other claims, however, Plaintiff will be granted time in which to show cause, in writing, why this claim should not be dismissed.

Plaintiff's final claim in this matter is that his Sixth Amendment rights were violated when Defendant Marino denied the appeal of Plaintiff's grievance before Plaintiff submitted it and without holding a hearing. (Doc. 8, p. 3.) It is not clear what Sixth Amendment right Plaintiff believes was violated. The Sixth Amendment, by its own language, applies to the rights of "the accused" in "criminal prosecutions." U.S. Const. Amend. VI. Thus, it does not obviously apply to grievance procedures in a county jail.

Moreover, "there is no independent constitutional right to state administrative grievance procedures." *Gray v. Geo Group, Inc.*, 727 Fed. Appx. 940, 948 (10th Cir. Mar. 6, 2018) (unpublished) (affirming dismissal of due process claims based on failure to answer inmate's grievances); *see also Frantz v. Kansas*, 2024 WL 4212544, *1-2 (10th Cir. Sept. 17, 2024) (unpublished) (affirming dismissal of due process claims that focused on responses to prison grievances), *pet. for cert.* docketed Oct. 17, 2024. And to the extent that Plaintiff intended to assert a due process claim, "prison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the [F]ourteenth [A]mendment." *See Murray v. Albany County Bd. of County Comm'rs*, 211 F.3d 1278, 2000 WL 472842, *1 (10th Cir. April 20, 2000) (unpublished order and judgment); *see also Spry v. McKune*, 479 Fed. Appx. 180, 2012 WL 2308711, *1 (10th Cir. June 19, 2012) (unpublished order and judgment) ("Inmates do not have a protected liberty interest in pursuing formal prison grievance procedures."). Thus, Plaintiff has failed to state a plausible claim for relief based on the denial of his grievance appeal. He will be granted time, however, to show cause, in writing, why this claim should not be dismissed.

## IV. Response Required

In light of the Report, the Court is considering dismissal of this matter for failure to state a claim. Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered. Failure to respond by the Court's deadline may result in dismissal of this action without further prior notice.

**IT IS THEREFORE ORDERED BY THE COURT** that the clerk is directed to alter the docket to reflect the correct spelling of Defendant Yuridia Marino's name.

**IT IS FURTHER ORDERED** that Plaintiff is granted to and including **December 6, 2024**, in which to respond to the *Martinez* Report and to show cause, in writing, why this matter should not be dismissed for the reasons explained in this order.

**IT IS SO ORDERED.**

Dated November 4, 2024, in Kansas City, Kansas.

s/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE